UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

**AHRON BRAUN;**
*Plaintiff,*

**Case No. 7:12-cv-04687-KMK**

-v-

**UNITED RECOVERY SYSTEMS, LP;**
*Defendant,*

TRIAL BY JURY DEMANDED

------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM AND OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM OF LAW**

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW the Plaintiff, Ahron Braun, who hereby submits his Opposition to Defendant's, Motion to Dismiss and states as follows:

## INTRODUCTION

1. Plaintiff is Ahron Braun, hereinafter Braun; Defendant is United Recovery Systems, LP, hereinafter, URS.
2. On June 12, 2012, Braun filed a complaint against URS for violations of the Fair Credit Reporting Act hereinafter FCRA in this Court.
3. On August 7, 2012 Judge Preska, wrote an order to Dismiss and directed Braun to file an Amended complaint within 60 days.
4. On August 30, 2012 Braun filed an Amended complaint against URS for violations of the FCRA in this Court.
5. On January 16, 2013 URS filed an Answer and a Motion to Dismiss.
6. On January 22, 2013 Braun filed a Reply to the Answer from URS.

7. On February 28, 2012 a Pre-Motion Conference was held before Judge Karas, the following scheduling order was set, URS shall serve their Motion to Dismiss upon Braun by no later than April 1, 2013, Braun shall serve his opposition upon URS by no later than May 1, 2013, URS shall submit their reply in support of their motion no later than May 15, 2013.

8. On April 1, 2013 URS filed their Motion to Dismiss, Declaration, and Memorandum of Law and mailed it to Braun.

9. The Motion to Dismiss from URS is improper in this case because there are genuine issues of material fact on each element of Braun's cause of action for violations of the FCRA, as there was no permissible purpose to obtain Braun's consumer credit report.

**STATEMENT OF FACTS**

10. In order to comport with Local rule 56.1 and F.R.C.P. 56 *et al*, Braun states as follows:

    a) URS does not argue that the Amended complaint was filed against them;
    b) URS does not argue that they obtained the credit report of Braun;
    c) There is no verified evidence in any form that has been entered into the court record showing URS was **"retained"** to collect any legitimate debt from Braun;
    d) There is no verified evidence in any form that has been entered into the court record showing that URS did not obtain Braun's social security number by fraud or misrepresentation.
    e) Other than a Declaration by R. David Lane, were he declares that CITIBANK, N.A. **"assigned"** Braun's account to URS for collection, and obtained Braun's credit report in **"May 2011"**.

f) This is questionable information; there is nothing before the court as evidence to establish proof of an **"assignment"** at the time URS obtained Braun's credit report on **"March 14, 2011",** the actual date in Braun's credit report.

g) The Statements and Facts URS states in their Memorandum of Law Supporting their Motion is not admissible fact evidence[1], and is hearsay by a third party with no firsthand fact evidence to present.

11. Braun repeats all statements put forth in his previous reply filed on January 22, 2013.

12. URS in their Memorandum of Law makes mere conclusory statements that do not constitute fact evidence. *See Leigh v Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000)[2] and *Ellis v England*, 432 F.3d 1321, 1325-26 (11th Cir. 2005)[3] *See* also *Bald Mountain Park Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)[4].

13. According to the web site of Justia Inc. in California[5] specializing in listing all filed cases:

a) A search of the federal dockets turns up over 310 lawsuits filed against URS since March 2005, all of them for alleged violations of the Fair Credit Reporting Act or the Fair Debt Collection Practices Act.

b) United Recovery Systems, LP is a debt collection agency headquartered in Houston, Texas. They employ over 1000 people in six offices... They are actually owned by a company called the Audax Group.

---

[1] *Deutsche Bank National Trust v Constance Lawrence Mitchell*, Sup.Ct. of NJ, Appellate Division Dkt. # A-4925-09T3, August 9, 2011 "Attorneys in particular should not certify to facts within the primary knowledge of their clients".

[2] "This court has consistently held that conclusory allegations without supporting facts have no probative value".

[3] "Mere conclusions and unsupported factual allegations are legally insufficient to grant a motion to dismiss".

[4] "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat a complaint".

[5] http://dockets.justia.com

c) URS has been in business since 1983, and claims to provide collection services for some of the biggest financial firms in the country.

d) URS purchases very old debt from multiple other debt collection agencies – what's called a second or third tier collection agency. The debts they are attempting to collect on are often long past the statute of limitations, and are missing a great deal of the original information.

e) Since debt buyers purchase the accounts for fractions of pennies on the dollar of their face amount, their aim is often to collect as much as possible from whomever they can convince to pay.

f) Since URS offers an "aggressive performance bonus" policy to account representatives, the debt collectors for the company are highly motivated, which may cause them to brush up against the line of the Fair Debt Collection Practices Act or the Fair Credit Reporting Act.

g) A quick look at what the Better Business Bureau website is saying about URS as of June 2012, the BBB gives URS an "F" rating, in part because it has logged 247 closed URS complaints within the past three years, and 91 closed URS complaints within the past 12 months.

14. The use of electronic files passed from one computer to another has become the engine of fraud in the debt collection industry; As long as the courts are willing to accept digital information generated by digital decisions and conclusory statements based upon that information the theft and abuse will continue and increase exponentially.

15. There is no verified evidence in any form that has been entered into the court record showing URS was **"retained" or "assigned"** to collect anything from Braun.

16. Braun does not dispute the Declaration from R. David Lane, Esq., as it may be an authentic statement by him, but Braun has repeatedly disputed its contents by mailing dispute letters to URS asking them why they obtained his credit report and they failed to respond.

17. The Declaration contains nothing more than hearsay claims that URS was **"retained"** or **"assigned"** to collect an **"alleged debt"** and that one had been **"turned over to them"** mere alleged, conclusory and hearsay statements are not enough to establish a **"reason to believe"** as a matter of law. (*See Miller v Wolpoff & Abramson*[6]).

18. The FCRA defines the procedures for certification to the Credit Reporting Agencies which users must provide when requesting inquiries into a consumer's information... "These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and **certify** that the information will be **used** for no other purpose." 15 U.S.C. § 1681e(a).

19. After Braun was seeking remedy for the invasion of his privacy which URS committed on **March 14, 2011**, the inquiry disappeared from his credit report this was a tacit admission that they have violated the FCRA, and would suggest it should not have been there in the first place.

20. Nothing has been established on the record as to what type, if any, certification was presented to the Credit Reporting Agencies prior to URS obtaining Braun's credit report.

21. There is no doubt whatsoever that obtaining a consumers private, financial information without their written consent in a manner which could affect something as vital to them as a credit score

[6] Miller v Abramson, LLP, 2d Cir., No. 02-7017, Feb. 25,2003 Defendants in the case indicate they reviewed no more than "***very limited information***" before collection action such as; ***"Mr. Miller's full name, social security number, current address, telephone number and the Lord & Taylor account number, the amount of the debt and a notation that Mr. Miller was an attorney"***. The Court held that the "***information reviewed would not enable a determination of whether Mr. Miller was in bankruptcy, whether information in the record was inconsistent or incomplete, whether Miller was or was not obligated to pay the debt, or whether Miller was the correct debtor.***"...... "*the information supplied was* ***too insufficient*** *to support the conclusion as a* ***"matter of law"****.... Judge Sotomayor stated; "On this undeveloped record, however, it suffices for us to hold that* ***merely being told by a client that a debt is overdue is not enough.***"

or create the possibility of that information being seen and even used by an unknown number of people would constitute an adverse action.

22. At no time did URS notify to Braun that they had taken said adverse action and it was only when Braun filed his complaint that it attempted to claim they had a right to do so.

## RESPONSE TO URS'S ALLEGED UNCONTESTED FACTS

23. In URS's Memorandum of Law they list facts which are stated to be uncontested. Braun does contest these items and enumerates as follows:

a) There is nothing in the record shown that URS was "contracted" to collect anything from anybody. URS relies on nothing more than conclusory statements about unverified electronic data from an unknown data base, an unknown computer and entered by unknown parties at unknown locations to make statements it expects to be taken as fact.

b) URS states that they accessed Braun's credit report in **May of 2011**. According to the copy of Experian report it shows only one access in **March 14, 2011,** and not **May 2011** although they are required by law to show all instances of access to a consumers credit file.

c) URS fails to mention the fact that Braun mailed two letters, the first a Letter (*See* **Exhibit "B"** attached to the Amended Complaint) and the second, a Notice of Pending Suit (*See* **Exhibit "D"** attached to the Amended Complaint).

d) URS failed to respond to these two letters, unsubstantiated by anything other than the word of a third party who could have no firsthand knowledge of what, if anything, was happening in 2011 to **certify** a "reason to believe" that have given

them a legitimate permissible purpose.

e) No evidence of any contract or agreement granting URS the authority to invade Braun's personal financial information was then or ever been provided. No records of **"certification"** to Experian to establish a "permissible purpose" under 15 U.S.C. §1681e was then or ever been provided.

f) Braun gave two opportunities for URS to open communications to prove to him their invasion into his privacy had been lawful and settle the matter. URS chose instead to make statements to the effect that they had a permissible purpose because they say so and that should put an end to the matter.

g) Now Braun is expected to believe as is the Court that suddenly there was a third party to collect on an alleged debt which afforded URS a permissible purpose and that URS breached the contract by not making a single attempt to collect and doing nothing other than invading Braun's privacy, no phone calls, no dunning letters sent, or any other standard collection actions.

**ARGUMENTS**

24. URS makes conclusory statements not supported by any authenticated evidence before the Court. In support of their claim to have been **"retained"** or **"assigned"** to collect on an alleged debt purported to be owed by URS they attach nothing, there is no documentation on the record to prove URS was hired or contracted by any entity.

25. URS makes conclusory statements out of context as to Braun's correspondence with them by ignoring Braun's first letter mailed to them on May 1, 2012, URS made no attempt to prove to Braun that they had a lawful reason to access his credit report on **March 14, 2011** and instead made the same blanket conclusory statement they have made in this case.

26. Instead of providing proof of a permissible purpose and proper evidence of **"certification"** to the credit reporting agency before obtaining Braun's credit report they simply say that they had it because they were attempting to collect an alleged account.

27. URS claims that being a debt collection agency, it "has permissible purpose" to obtain a copy of the credit report as a matter of law by reason of 15 U.S.C. § 1681b(3)(A) which states:

    a) **any consumer reporting agency** may furnish a consumer report under the following circumstances and no other: To a person which it has reason to believe...intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, **or review or collection of an account of, the consumer;**...(emphasis added).

28. 15 U.S.C. § 1681b(a)(3)(A) refers to the **consumer reporting agency** and **its reason to believe** the person making the request for the consumer report "*intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of the consumer*." 15 U.S.C. § 1681b(a)(3)(A) **does not refer to an entity claiming to have a permissible purpose** when in truth it is not authorized to collect an alleged account on behalf of the actual creditor.

29. It does not refer to a third party with whom there has never been any extension of credit, contractual obligation and or agreement with the consumer. It does not refer to a third party which has not provided any factual claim to having been **"retained"** or **"assigned"** by an actual creditor who may or may not have been involved with a "credit transaction" with the consumer.

30. Minus the proof of an underlying transaction with that consumer, a debt collector has no

permissible purpose to obtain a copy of that consumer's credit report.

31. URS has repeatedly stated it had a permissible purpose based solely on its "intent" which it claims was to "collect" on an alleged account from Citibank, N.A., but never made a single attempt to collect anything from Braun for any reason and Braun never heard from URS until he found them in his credit report.

32. Collectors often cite *Pintos v Pacific Creditors Association*, No. 04-17485 (April 30, 2009) by taking it out of context, generally by omitting the two most important words. The court held that debt collection does **not necessarily** constitute a permissible purpose under the FCRA to obtain a consumer's credit report… The majority's distinction in Pintos was between obtaining a credit report in the process of collection of a judgment (permissible in the eyes of the majority), and obtaining a credit report in the collection of an account before there was a judgment not permissible according to the majority.

33. In its findings the court in Pintos also relied on (*Mone v. Dranow, 945 F.2d 306 (9th Cir. 1991).* The court without discussion, concluded that the Defendant couldn't rely on 15 U.S.C. § 1681b(a)(3)(A) because it did not **USE** the credit information in connection with a credit transaction involving the consumer.

34. URS did not **USE** the information it obtained in Braun's credit report for any collection action with Braun, this is a **Fact**.

35. Other than a Declaration from R. David Lane, self-identified as URS's Counsel and a member with the firm of Marshall Dennehey Warner Coleman & Goggin, P.C., there is nothing on the record shown that URS had authority to collect anything from Braun in 2011.

36. Mr. Lane declares under the penalty of perjury in his Declaration that he is fully familiar with the facts and matters and he also declares that Citibank, N.A., "assigned" Braun's account to

URS with no date given when this occurred, and that URS accessed Braun's credit report on **May of 2011**.

37. In the Experian credit report that Braun attached to his Amended complaint as (**Exhibit "A"**) it clearly show **March 14, 2011** and not in **May of 2011.**

38. When did Mr. Lane, became familiar with the facts and matters, when was the alleged Citibank, N.A. account from Braun assigned to URS, and where does it show that URS accessed Braun's credit report in **May of 2011**.

39. There is nothing which indicates any documents existed in 2011 and were not wholly contrived in 2012 or in 2013 possibly for litigation purposes. Nothing which can be created today can provide a basis for an action taken nearly two years ago and certainly cannot provide a retro-active **"reason to believe"** for the Credit Reporting Agencies to have given URS access into Braun's credit report.

40. URS has provided no verified evidence of any contract or "assignment" to the Court or to Braun which indicates a specific ownership or right to collect the alleged account of Braun in 2011, the Declaration of an individual who has no firsthand knowledge of the alleged debt being claimed as having afforded URS a permissible purpose are hearsay and mere conclusory statements.

41. Being "familiar" with URS's internal records and business practices does not equate to firsthand fact knowledge of how those records were created, when they were created or by whom, Electronic data is subject to literally millions of variables in its accuracy when moving from one computer to another and only the flesh and blood human being who originally creates such data can testify as to its veracity.

42. URS merely states, we have this information and therefore we had a permissible purpose to

obtain the credit report. Braun never gave URS, directly or indirectly, permission to obtain his credit report.

43. URS's assertion that Braun filed this case in "Bad Faith" or that it is "Frivolous" based on a single letter taken out of context is without foundation, Braun attempted to communicate with URS twice by certified mail and also in emails with the counsel for URS.

## STANDARD OF REVIEW

44. Although a Motion to Dismiss is proper in any case where there is no genuine issue of material fact, this is not a case in which the court should grant URS request. (*See* Fed. R. Civ. P. 12(b)(6); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

45. A Defendant who seeks to dismiss a plaintiff's cause of action they must demonstrate the absence of a genuine issue of material fact by either (1) submitting evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claim (*See J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996); (*See Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552-53).

46. Rule 12(b)(6) mandates the entry only **after adequate time for discovery** and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. (*See Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *Riggs v. Anthony Auto Sales*, 32 F. Supp. 2d 405 (1998 Westlaw 663346) (U.S.D.C. W.D. La. 1998); *Simpson v. Anthony Auto Sales*, 32 F. Supp. 2d 407 (1998 Westlaw 663350) (U.S.D.C. W.D. La. 1998).

47. A Defendant cannot rely on conclusory statements to establish that a Plaintiff has not presented evidence on an essential element of its claim. Rather a Defendant must demonstrate an absence

of genuine factual dispute. (*See Celotex Corp.*, 477 U.S., 106 S. Ct. at 2555).

48. Only if a Defendant meets its burden is Plaintiff required to respond with proof to show a genuine issue of material fact.

49. In determining whether there is a disputed issue of material fact, the court must consider all evidence in the light most favorable to Plaintiff as the nonmoving, (*See Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002).

50. The FCRA, like the other portions of the Consumer Credit Protection Act of 1968, is to be liberally construed. (*See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995) (Cal.) its provisions are to be construed in favor of recovery by the Consumer and against the Credit Reporting Agency or user of the Credit Information.

51. Braun, must prove the following essential elements to sustain a claim for damages brought from violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681 *et seq*. that URS obtained Braun's credit report without permissible purpose, because there is a material fact issue on the element of, URS obtained Braun's credit report without permissible purpose, URS is not entitled to their Motion To Dismiss in this case.

52. For URS to successfully argue for 12(b)(6) Motion they must show that there are no material fact issues as to any elements of the Braun's cause of action where the only element is whether URS had a permissible purpose to obtain Braun's credit report.

53. Braun has undeniably shown the Court that there are issues of material fact before the Court and to grant a Motion to Dismiss at this juncture in the proceedings would be tantamount to short circuiting the judicial process and is not warranted in this case. Neither has the URS shown evidence that Braun has acted in bad faith or harassed them in any way.

54. Braun has simply stood his ground on his convictions and refused to be intimidated and coerced

or to simply accept hearsay conclusory statements and therefore URS is not entitled to be awarded with the deliberately inflated legal costs incurred by them thus far.

55. URS has shown nothing before the Court to evidence that they made even a minimal effort to authenticate the alleged account purported to belong to Braun in 2011 before taking an action which could have damaged Braun nor have they revealed what certification was given to the credit reporting agency before obtaining Braun's credit report.

56. The law is very clear in that "In the absence of statutory definition, a statutory term will be accorded its ordinary meaning." (*See Romine v. Diversified Collection Services, Inc.*, 155 F.3d 1142 (9th Cir. 1998); *Northwest Forest Resource v. Glickman*, 82 F.3d 825, 833 (9th Cir. 1996).

57. One must look to the clear language and plain words as a presumption exists that the Congress intended the plain language to apply in light of the purpose of the statute. (*See Louisiana Credit Union League v. U.S.*, 693 F.2d 525 (5th Cir. 1982) (La.); *Perrin v. U.S.*, 100 S. Ct. 311, 444 U.S. 37 (1979); *Clardy v. U.S.*, 760 F.2d 590 (5th Cir. 1985); *State of Louisiana, ex rel Guste v. U.S.*, 656 F. Supp. 1310 (U.S.D.C. W.D. La. 1986), affirmed, 832 F.2d 935 (5th Cir.).

58. Braun must merely show direct or circumstantial evidence of willful misconduct or actions Braun need not produce a "smoking gun" or any other form of definitive proof of the URS's intent or conscience. (*See Whitesides, supra*; *Cushman v. Trans Union Corp.*, 920 F. Supp. 80, 84 (U.S.D.C. E.D Pa. 1996).

**CONCLUSION**

59. URS has not met their burden to show that there are no material facts at issue for any element in Braun's complaint. In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmoving, but only if both parties

have introduced evidence showing that an actual controversy exists". (*See Lynch v. Props, 140 F. 3d at 625*).

60. URS has failed to establish evidence before the court or to Braun to show or prove there was ever any contract by which they were **"assigned"** or **"retained"** specifically to collect any alleged debt belonging to Braun.

61. From this evidence alone, notwithstanding any further evidence which could be brought out during the Discovery process, a jury could reasonably find that URS **knowingly and willfully** obtained the consumer report under false pretenses and without truthful certification to the Credit Reporting Agencies in question which certainly provides for a material fact matter at issue still before the Court.

62. Upon obtaining Braun's credit report URS made no attempt at collection of the alleged account that they claim gave them a permissible purpose. There is no information contained in the credit report to justify the need for obtaining it that could not have been obtained with a simple telephone call or a letter to Braun, yet neither was ever attempted. There was no dunning letter mailed and no disclosure statement provided after invading Braun's privacy by mining his credit report for information.

63. URS now claims it was **"assigned"** or **"retained"** to collect in order to justify their violation yet made no effort to perform its obligation under such a contract.

64. According to Mr. Lane, in his Memorandum of Law he states "Even if the debt sought by URS was invalid (which is not the case, as the debt was in fact due and owing), URS accessed the report for legitimate collection purposes".

65. If Mr. Lane, acts in this case as a witness in declaring under the penalty of perjury that Braun owes to anyone anything, than he cannot act as the Attorney. (*See Trinsey v. Pagliaro, 229 F. Supp. 647 - Dist. Court*)

66. There are no documents purporting to evidence for any type transfer of ownership of the alleged "account" to URS or any documentation showing the actual existence of any alleged "account" from Citibank, N.A. or any other entity alleged to be in the chain of ownership nor a power of attorney granting agency authority to URS from Citibank, N.A.

67. URS had not produced any evidence how it obtained these files. Whether these files were obtained through a Debt Purchase of loan transaction from Citibank, N.A. or if they are a representative of URS, if so then they need to produce evidence of agency from Citibank, N.A. that URS is in fact their agent.

68. Braun's allegation of no permissible purpose is a negative averment and the burden of proof in this case rests with URS to prove they did in fact have one. A conclusory statement and mere bare bones that cannot stand as fact about an alleged account, personal information in regard to Braun and an assumption that the acquisition of electronic data constitutes an authentic fact is not considered evidence.

69. If all that would be required is to state "we had a permissible purpose because so and so gave us some information about a debt", without making any attempt to validate, authenticate and establish factual accuracy of the information then certify to the Credit Reporting Agency that it is not only authentic but will be used for a particular purpose which never takes place, even in this case could purport to have a permissible purpose to obtain another ones credit report.

70. URS has shown no fact evidence that there was any attempt to authenticate before violating Braun's privacy and obtaining his consumer credit report.

71. The Amended complaint specifies that URS illegally obtained Braun's credit report and never even tried collecting on a nonexistent debt. The factual basis of Braun's allegations against URS are crystal clear.

72. Pro se pleadings generally are held to less stringent standards than those applied to members of the Bar, for example, in reviewing a pro se litigant's complaint for dismissal, the court must read the complaint less stringently than it would an attorney's. (*See* Hughes v. Rowe, 449 U.S. 5, 9-10 (1980) (per curiam); Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam); Madyun v. Thompson, 657 F.2d 868, 876 (7th Cir. 1981).

73. Pro se complaints should not be dismissed for failure to state a claim unless it is apparent that they are unsupportable in law or fact. (*See* Brandon v. Dist. of Columbia Bd. of Parole, 734 F.2d 56, 62 (D.C. Cir. 1984), *cert, denied,* 469 U.S. 1127 (1985); Williams v. Kullman, 722 F.2d 1048, 1050 (2d Cir. 1983); Bayron v. Trudeau, 702 F.2d 43, 45 (2d Cir. 1983).

74. Braun has pleaded facts sufficient to allow the court, drawing on "judicial experience and common sense", to infer "more than the mere possibility of misconduct", which easily satisfies his burden of pleading under the FCRA, in addition to the FCRA at this stage. (*See* Ashcroft v. Iqbal, 129 S.Ct. at 1950.) Braun's claims should therefore survive dismissal.

**WHEREFORE,** because URS has failed to show that there is no issues of material fact or a bona-fide claim before the Court Braun respectfully requests the Court deny URS's Motion to Dismiss and allow Braun's claim to move forward to trial on the merits and to complete the discovery process. Because URS has also failed to establish bad faith, frivolity or harassment on the part of Braun, Braun also requests this Honorable Court deny URS's claim for fees incurred in the defense of this case. In the event the Court should determine that Braun

has failed to state in his pleadings an adequate claim for relief, Braun requests the Court to grant him leave to Amend his complaint a second time and he will make sure to correct any deficiencies identified by the Court.

Dated: April 28, 2013

Respectfully Submitted,

By: ______________________
Ahron Braun
4 Mountain Road Unit 205
Monroe, NY 10950
ip84510950@gmail.com

**CERTIFICATION & AFFIRMATION OF SERVICE**

I, Ahron Braun, hereby certify and declare that a true and correct copy of the above and foregoing Opposition was mailed on April 28, 2013, thru the U.S. Certified Mail to the parties listed below.

R. David Lane Jr. – Counsel for
UNITED RECOVERY SYSTEMS, LP
88 Pine Street, 21st Floor
New York, NY 10005-1801
Certified Receipt # 7011 0110 0000 9178 5870

Dated: April 28, 2013

By: ______________________
Ahron Braun